UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

L.T. *et al*.,

                                      Plaintiffs,

            -against-                                      1:21-CV-1034 (LEK/DJS)

HOWARD A. ZUCKER, in his official
capacity and in his individual capacity,

                                      Defendant.

_____

<u>**MEMORANDUM-DECISION AND ORDER**</u>

**I.      INTRODUCTION**

          Plaintiffs, minor students attending P-12 schools in New York State and their parents,

bring this action for injunctive and declaratory relief against Defendant Howard Zucker in his

official capacity as Commissioner of Health for New York State and in his individual capacity.

<u>See</u> Dkt. No. 1 ("Complaint"). Plaintiffs challenge the mask mandate issued by Zucker on

August 27, 2021 and seek to enjoin its enforcement. Presently before the Court is Plaintiffs'

request for temporary restraining order and expedited discovery in advance of an order to show

cause hearing for preliminary injunction. Dkt. No. 4-1 ("Plaintiffs' Memorandum"). Defendant

has filed his response in opposition. Dkt. Nos. 8 ("Morne Declaration"), 8-8 ("Defendant's

Memorandum"). On October 5, 2021 Plaintiffs filed their reply. Dkt. No. 12 ("Plaintiffs'

Reply").

          This case involves a mask mandate instituted by Defendant for K-12 schools in New York

State. Mask mandates and the wearing of masks generally is an issue that has divided an already-

polarized American public. On one hand, many view masks and mask mandates as a means

necessary to protect citizens' inalienable right to life. Others view such mandates as an

unnecessary and unjust government intrusion into the lives of citizens. Despite this division, the goals of citizens and policymakers on both sides of the issue remain similar: the creation and promotion of a free, prosperous, and healthy society. This remains true even as quarrelling over the means and methods used to achieve such goals unnecessarily transforms neighbors into strangers and friends into adversaries.

The present matter is no different. Plaintiffs and Defendant seek the same ends: to preserve the lives of U.S. citizens while promoting an environment wherein children may receive an education most beneficial for their futures. To advance this goal, Plaintiffs challenge an order issued by Defendant requiring all students, teachers, and visitors to wear face coverings in any P-12 school. Plaintiffs seek a temporary restraining order enjoining enforcement of the mandate, arguing that it infringes on the First Amendment rights of students and impairs their learning, and expedited discovery in advance of a later hearing on their request for preliminary injunction. For the reasons stated below, Plaintiffs' request for a temporary restraining order is denied and their request for expedited discovery is granted.

## II.   BACKGROUND

### A.  The COVID-19 Pandemic

SARS-COV-2 ("COVID-19" or "COVID") is a deadly virus reported to have killed over 700,000 Americans[1] and over 55,000 New Yorkers[2] since March of 2020.[3] COVID may be

---

[1] See COVID-19 Dashboard, JOHNS HOPKINS UNIVERSITY OF MEDICINE, found at https://coronavirus.jhu.edu/map.html (last viewed October 11, 2021).

[2] See COVID-19 Fatalities, NEW YORK STATE DEPARTMENT OF HEALTH, found at https://covid19tracker.health.ny.gov/ (last viewed October 11, 2021).

[3] The Court takes judicial notice of facts regarding the spread and lethality of COVID-19 as reported by dependable public health authorities. See Joffe v. King & Spalding LLP, No. 17-CV-3392, 2020 WL 3453452, at *7 (S.D.N.Y. June 24, 2020) (collecting cases) ("[C]ourts in this

easily spread through respiratory droplets expelled by infected persons, even those who exhibit no symptoms.[4] These droplets can remain airborne for hours, especially in poorly ventilated environments.[5]

Face coverings have been a common, yet divisive, means of combating the spread of COVID-19. National organizations like the Centers for Disease Control and Prevention ("CDC") and supranational organizations like the World Health Organization ("WHO") alike have recommended the use of masks to combat the spread of COVID-19. See Morne Dec., Ex. T at 2 (recommendation from CDC) & Ex. CC. at 1–2 (recommendation from WHO). Even so, governments that have attempted to mandate mask-use have been faced with protests and legal challenges.[6]

### B.  The Mask Mandate

---

circuit have routinely taken judicial notice of the likely risks and severity of COVID-19 and the potential efficacy of mitigation measures."); Valenzuela Arias v. Decker, 459 F. Supp. 3d 561, 570 (S.D.N.Y. 2020) (taking judicial notice of facts regarding COVID-19 as reported by the CDC); see also Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.").

[4] See Bender et al., Analysis of Asymptomatic and Presymptomatic Transmission in SARS-CoV-2 Outbreak, Germany, 2020, Emerging Infectious Diseases, Volume 27, Number 4 (April 2021).

[5] See Scientific Brief: SARS-CoV-2 Transmission, CDC, found at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission (last viewed October 11, 2021).

[6] See, e.g., Carma Hassan, School board meeting canceled as crowd protests mask mandate, Hassan, CNN (September 24, 2021), found at https://www.cnn.com/2021/09/24/us/school-board-meeting-canceled-mask-mandate/index; Kirsten Grieshaber, Germany: police clash with protesters against virus measures, AP NEWS (March 20, 2021), found at https://apnews.com/article/berlin-germany-coronavirus-pandemic; W.S. v. Ragsdale, No. 21-CV-01560, 2021 WL 2024687 (N.D. Ga. May 12, 2021); Stewart v. Justice, 502 F. Supp. 3d 1057 (S.D.W. Va. 2020).

On March 7, 2020 the Governor of New York declared a state of emergency in response to the public health crisis caused by COVID-19. See Morne Dec., Ex. D at 2. Despite the government's invocation of emergency powers, COVID spread quickly through the state. After months of quarantines, economic shutdowns, hospital bed shortages, and thousands of deaths, the state of emergency ended on June 24, 2021 due to declining hospitalization and positivity rates. See id.

Unfortunately, this success was to be short-lived. In the summer of 2021, what health officials refer to as the Delta variant became prominent in New York and sent COVID infections skyrocketing ten-fold. Id., Ex. H at 2. On her first day in office, the current Governor of New York directed the New York State Department of Health to implement a universal mask requirement in all schools as determined necessary at the discretion of the State Commissioner of Health, the Defendant in this matter. Id.

Consequently, on August 27, 2021, the Department of Health issued an Emergency Rule that required any person over age two, and medically able to tolerate wearing a face mask, to wear such a mask "in certain settings as determined by the Commissioner as issued in a determination, which may include schools, public transit, homeless shelters, correctional facilities, nursing homes, and health care settings." Morne Dec., Ex. A at 1. The same day, Defendant, the Commissioner of the Department of Health, issued a determination (together with the Department of Health's Emergency Rule referred to as the "mask mandate") requiring face coverings or masks in healthcare settings, adult care facilities, P-12 school settings, correctional facilities and detention centers, homeless shelters, and on public transport. Id., Ex. I ("Commissioner's Declaration") at 2–3.

### C.  Procedural History

4

On September 20, 2021, Plaintiffs, who are children enrolled in New York State schools

and the parents of those children, filed their Complaint in this matter arguing that Defendant's

mask mandate inhibits their right to free speech, is preempted by federal law, and improperly

infringes on the parents' rights to make decisions concerning the care of their children. See

generally Complaint. On September 27, 2021, Plaintiffs filed the present motion requesting a

preliminary injunction, a temporary restraining order to be put in place pending the hearing on

the preliminary injunction, and for expedited discovery in advance of the hearing. See Dkt. No.

4. To support their request for a temporary restraining order, Plaintiffs argue they are likely to

succeed in showing the mask mandates violates their First Amendment rights[7], and thus they are

suffering irreparable injury while the mandate is in place. See Pls.' Mem. at 2–3.

## III.   LEGAL STANDARD

The standard that governs a request for a temporary restraining order is the same as that

governing a request for a preliminary injunction. Stagliano v. Herkimer Cent. Sch. Dist., 151 F.

Supp. 3d 264, 272 (N.D.N.Y. 2015) (citing Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO

v. N.Y. Shipping Ass'n, 965 F.2d 1224, 1228 (2d Cir. 1992)). Where "a preliminary injunction

will affect government action taken in the public interest pursuant to a statute or regulatory

scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a

---

[7] While Plaintiffs' Complaint presents claims based on federal preemption and infringement on
parents' rights, they do not mention those claims as grounds for a temporary restraining order in
their present motion, therefore the Court will not consider them in its decision. See Antietam
Battlefield KOA v. Hogan, 461 F. Supp. 3d 214, 227 (D. Md. 2020) (refusing to address claims
contained in complaint where plaintiffs did not discuss them in their motion for temporary
restraining order); see also Ned Chartering & Trading, Inc. v. Republic of Pakistan, 294 F.3d
148, 155, 352 U.S. App. D.C. 350 (D.C. Cir. 2002) (The Court "is not required to unearth
theories and precedents not cited by a party . . . . Bringing those precedents and theories to the
attention of the district judge is the job of the party's attorneys."); McCoy v. Mass. Inst. of Tech.,
950 F.2d 13, 22 n.7 (1st Cir. 1991) ("Courts are entitled to expect represented parties to
incorporate all relevant arguments in the papers that directly address a pending motion.").

Case 1:21-cv-01034-LEK-DJS   Document 16   Filed 10/13/21   Page 6 of 26

likelihood of success on the merits, [8] and (3) public interest weighing in favor of granting the

injunction." Hopkins Hawley LLC v. Cuomo, 518 F. Supp. 3d 705, 713 (S.D.N.Y. 2021)

(quoting Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton, 841 F.3d 133, 143 (2d

Cir. 2016))

## IV.   DISCUSSION

### A.   Plaintiffs Have Not Established Irreparable Harm Absent a Temporary Restraining Order

Courts often assume irreparable harm is present if a party moving for a temporary

restraining order establishes they are likely to succeed in showing a government action violates

their First Amendment rights. See Bronx Household of Faith v. Bd. of Educ., 331 F.3d 342, 349

(2d Cir. 2003) ("Where a plaintiff alleges injury from a rule or regulation that directly limits

speech, the irreparable nature of the harm may be presumed."); Tunick v. Safir, 209 F.3d 67, 70

(2d Cir. 2000) ("Violations of the First Amendment are presumed irreparable."). Accordingly,

Plaintiffs argue they will suffer irreparable harm absent a temporary restraining order because

---

[8] Defendant argues that the heightened standard in Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27 (2d Cir. 1995) requiring a "clear or substantial likelihood of success on the merits" should apply. See Def.'s. Mem. at 7. Defendant claims the requested injunction is mandatory in nature, rather than prohibitive, because, if granted, it will alter the status quo. Id. The distinction between a mandatory and prohibitive injunction is "not without ambiguities or critics" and is often "more semantic[] than substantive." Tom Doherty, 60 F.3d at 34 (quoting Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985)). The temporary restraining order requested by Plaintiffs will certainly alter the status quo, however "[t]he distinction between mandatory and prohibitory injunctions . . . cannot be drawn simply by reference to whether or not the status quo is to be maintained or upset." Abdul Wali 754 F.2d at 1025. Often what is of most significant is "whether the non-moving party is being ordered to perform an act, or refrain from performing." Id. The injunction requested by Plaintiffs does not require Defendant to take a positive action but is most accurately categorized as prohibiting Defendant from enforcing the mask mandate. Defendant would be required to refrain from interfering in Plaintiffs' decision to wear, or not wear, masks. Cf. Tom Doherty 60 F.3d at 34 (noting that an injunction prohibiting a government official from interfering is prohibitive rather than mandatory, even if it alters the status quo). Accordingly, the heightened Doherty standard is not appropriate.

6

the mask mandate impermissibly infringes their First Amendment rights. Pls.' Mem. at 3.

However, as discussed below, Plaintiffs have failed to demonstrate it is likely they will prevail in

showing the mask mandate has violated their First Amendment rights, thus, they have likewise

failed to establish an irreparable harm.

### B.  Plaintiffs Have Not Established a Likelihood of Success on the Merits

To establish a constitutional violation, Plaintiffs attempt to show that (1) the mask

mandate incidentally burdens their exercise of First Amendment rights, thus intermediate

scrutiny is warranted, and, (2) the mandate fails intermediate scrutiny. Plaintiffs have not shown

a likelihood of success on either count.

### 1.   The Mask Mandate Does Not Incidentally Burden Plaintiffs' First Amendment Rights

Plaintiffs claim that masks conceal students' facial expressions, prevent them from seeing

the facial expressions of their teachers and other students, and cause both students and teachers

to alter their vocal tone and volume when speaking in school. See Pls.' Mem. at 4. Plaintiffs then

argue that facial expressions and vocal modulation are expressive conduct protected by the First

Amendment. Id. Thus, Plaintiffs reason, because the mandate requires students to wear masksm

the mandate incidentally burdens their First Amendment rights and warrants intermediate

scrutiny pursuant to United States v. O'Brien, 391 U.S. 367 (1968). Id. at 4–6.

To begin, the Court is skeptical that the mandate in fact forces Plaintiffs to conceal their

facial expressions. The CDC and FDA have approved facemasks that are clear and allow facial

expressions to be seen.[9] These masks, and many similar to them, are inexpensive, readily

---

[9] See Guidance for Wearing Masks, CDC, April 19, 2021, found at
https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance (last
viewed October 11, 2021) (stating that "[t]he FDA recently approved a transparent medical
mask.")

available, and would presumably comply with the mask mandate issued by the Defendant. Thus, it likely cannot be said that the mandate restricts Plaintiffs' ability to see facial expression or make their facial expressions seen.

  However, even if the mask mandate does prevent facial expressions from being seen and forces Plaintiffs to alter their vocal modulations, the mandate still would not likely be found to constitute an incidental burden on speech. The speech that is allegedly infringed is not sufficiently intertwined with the regulated conduct, and even if the two were sufficiently connected, the speech is not sufficiently particularized to fall under the First Amendment's protective umbrella.

   a.  <u>The Speech at Issue and the Regulated Conduct Are Not Sufficiently Intertwined</u>

The incidental burden doctrine promulgated by <u>O'Brien</u> and cited by Plaintiffs contemplates situations "where 'speech' and 'nonspeech' elements are combined in the same course of conduct." <u>See</u> <u>Texas v. Johnson</u>, 491 U.S. 397, 407 (1989) (citing <u>O'Brien</u>, 391 U.S. at 376). An examination of cases applying the <u>O'Brien</u> incidental infringement standard reveals that the First Amendment is only implicated where the conduct a plaintiff claims is protected speech is also the conduct directly regulated by the government action. <u>See, e.g.</u>, <u>Clark v. Community for Creative Non-Violence</u>, 468 U.S. 288 (1984) (finding communicative conduct–sleeping on National Mall overnight as protest–incidentally infringed by law forbidding camping on the Mall); <u>United States v. Albertini</u>, 472 U.S. 675 (1985) (finding communicative conduct–entering onto military base to protest–incidentally infringed by law forbidding entering on to base); <u>O'Brien</u>, 391 U.S. at 367 (finding communicative conduct–burning draft card–incidentally infringed by law forbidding mutilation of draft card). This is distinguished from situations where the course of conduct alleged to be speech is only tangentially burdened by regulation on a

8

distinct, second course of conduct. See, e.g., Arcara v. Cloud Books, Inc., 478 U.S. 697 (1986) (First Amendment did not apply because regulated conduct was prostitution, not bookselling activities of adult bookstore); Int'l Franchise Ass'n v. City of Seattle, 803 F.3d 389, 409 (9th Cir. 2015) (finding First Amendment not implicated because conduct at issue was economic in nature, not speech contained in parties' franchise agreements).

Thus, not every government action is subject to scrutiny "simply because each particular [action] will have some effect on the First Amendment activities of those subject to [it]." Arcara 478 U.S. at 706. Rather, an infringement on speech only implicates the First Amendment and O'Brien if conduct with a "significant expressive element" drew the legal remedy or the government action "has the inevitable effect of singling out those engaged in expressive activity." Id. at 706–707.

Here, Plaintiffs do not argue that mask wearing itself is speech. See Pls.' Reply at 4. Rather, they claim that the mask regulation affects a distinct course of conduct, their attempts to physically show facial expressions and use certain vocal modulation. However, the use of facial expressions or vocal tone is not the conduct that drew the regulation. And the conduct that is regulated, wearing of a mask, has repeatedly been held to not constitute protected speech. See, e.g., Antietam, 461 F. Supp. 3d at 237; Stewart, 502 F. Supp. 3d at 1066. The mandate likewise does not single out those engaged in expressive activity. It applies generally to all who enter healthcare settings, adult care facilities, P-12 school settings, correctional facilities and detention centers, homeless shelters, and on public transport. See Morne Dec., Ex. I at 2–3.

Thus, Plaintiffs have not established they are likely to show the mask mandate constitutes an incidental burden on their First Amendment rights as contemplated by O'Brien.

        b.   The Communication at Issue Is Not Sufficiently Expressive and Particularized to Warrant First Amendment Protection

9

Even if the expressive conduct at issue and the regulated conduct were sufficiently intertwined, vocal tone, volume modulation and facial expressions are not sufficiently particularized to constitute speech protected by the First Amendment.

To determine if conduct intertwined with expression has sufficient communicative elements to implicate the First Amendment, a court must ask whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." Johnson, 491 U.S. at 404 (quoting Spence v. Washington, 418 U.S. 405, 410–11 (1974)). The message meant to be conveyed by the expression must be "overwhelmingly apparent" and not simply a "kernel of expression." Rumsfeld v. Forum for Acad. & Institutional Rights, Inc., 547 U.S. 47, 66 (2006); City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989) (citing Johnson, 491 U.S. at 406). Where conduct must be accompanied by explanatory speech for its message to be understood, there is "strong evidence that the conduct at issue . . . is not so inherently expressive that it warrants protection." Rumsfeld, 547 U.S. at 66.

Here, Plaintiffs argue that the conduct at issue is sufficiently expressive and particularized because facial expressions and voice modulations are "inexorably linked" to the content and meaning of speech. See Pls.' Mem. at 5. However, this necessarily means that the abridged conduct only has understandable meaning to the extent it accompanies verbal speech and is therefore "not so inherently expressive that it warrants protection." Id. In other words, especially regarding vocal modulation, while the conduct may have some communicative intent, "the expressive component [of the conduct] is not created by the conduct itself but by the speech that accompanies it." Rumsfeld, 547 U.S. at 66.

Further, the meaning behind any given vocal modulation or facial expression is far from "overwhelmingly apparent," especially if the conduct is unaccompanied by speech. Likewise, the messages conveyed by these acts are generalized rather than particularized. Indeed, if the vague communication inherently passed on by vocal tone or facial expression were considered to be a "particularized message," the Court strains to think of what communication could possibly be considered general.

Therefore, the Plaintiffs have not successfully shown a likelihood that they will prevail in establishing their actions are speech as contemplated by the First Amendment, or that intermediate scrutiny is warranted.

2. *Appropriate Standard of Review for Constitutional Challenges to COVID-19 Restrictions*

If the conduct at issue were found to be speech that implicates the First Amendment, the Court would need to review the government action to determine if it was a permissible restriction. However, the proper standard of review of government actions taken in response to the COVID-19 pandemic is a source of much debate.

Some courts have implemented the highly deferential two-part test found in Jacobson v. Massachusetts, which finds a government action taken during a public health crisis unconstitutional only if it "has no real or substantial relation to [protection of public health and public safety], or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law." 197 U.S. 11, 31 (1905). See, e.g., S. Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring); In re Abbott, 954 F.3d 772, 784 (5th Cir. 2020); Hopkins Hawley LLC v. Cuomo, 518 F. Supp. 3d 705, 712 (S.D.N.Y. 2021). Yet others have found Jacobson insufficiently protective of constitutional rights and applied the traditional tiers of scrutiny analysis. See, e.g., Roman Catholic Diocese v. Cuomo, 141 S. Ct. 63,

66–68 (2020); <u>Agudath Israel of Am. v. Cuomo</u>, 983 F.3d 620, 635 (2d Cir. 2020); <u>Delaney v. Baker</u>, 511 F. Supp. 3d 55, 73 (D. Mass. 2021) (summarizing criticism of <u>Jacobson</u>).

The Court need not determine if <u>Jacobson</u> is the appropriate standard because, even under the less deferential traditional framework which the parties agree would require intermediate scrutiny, the Plaintiffs' have not shown they are likely to establish that the mask mandate is unconstitutional.

### 3. *The Mask Mandate is Likely to Survive Intermediate Scrutiny*

Even if the conduct at issue constitutes speech that is protected by the First Amendment, the government's mask mandate is likely to survive intermediate scrutiny. To survive intermediate scrutiny, a regulation that incidentally burdens free speech must (1) be within the constitutional power of the government, (2) further an important or substantial governmental interest, (3) be unrelated to the suppression of free speech, and (4) be narrowly tailored and no greater than is essential to the furtherance of that interest. <u>O'Brien</u>, 391 U.S. at 376–77 (1968). Plaintiffs concede points (1) and (3) for purposes of their motion for a temporary restraining order, Pls.' Mem. at 7, therefore the Court will focus its analysis on points (2) and (4).

a.  <u>Plaintiffs Have not Shown a Likelihood of Success in Demonstrating the Mask Mandate Does Not Further an Important Governmental Interest</u>

To satisfy this prong of intermediate scrutiny, there must be an important governmental interest at stake and the government action at issue must actually advance that interest[10]. <u>See</u> <u>Turner Broad. Sys. v. FCC (Turner I)</u>, 512 U.S. 622, 664 (1994) ("That the Government's

---

[10] Plaintiffs do not argue here that masks are ineffective in advancing the government's interest. However, Plaintiffs do assert that masks are ineffective at preventing the transmission of COVID-19 in their argument regarding whether the mask mandate is narrowly tailored. <u>See</u> Pls.' Mem. at 15–17. Thus, these arguments will be addressed below in section IV(B)(3)(b).

asserted interests are important in the abstract does not mean, however, that the [government action at issue] will in fact advance those interests."). When the government action is meant to curtail anticipated harm, the government "must demonstrate that the recited harms are real, not merely conjectural . . . ." Id. at 664.

Defendant asserts that the mask mandate was established to prevent the spread of COVID-19. See Def.'s Mem at 9. Stemming the spread of a virus that has killed over 700,000 Americans[11] and over 55,000[12] New Yorkers is undoubtedly an important and compelling governmental and societal interest. See Roman Catholic Diocese, 141 S. Ct. at 67 ("Stemming the spread of COVID-19 is unquestionably a compelling interest" sufficient to satisfy even strict scrutiny); Agudath, 983 F.3d at 633 (same).

Plaintiffs, however, argue that the government's interest in masking children to stop the spread of COVID-19 is not actually an important government interest for three reasons.

First, Plaintiffs claim that elected officials "have not considered masking children in school an important or substantial interest as to justify action" and this lack of importance is demonstrated by the fact there is no state of emergency currently in effect. See Pls.' Mem. at 9. However, the Department of Health's Emergency Rule and Commissioner Zucker's Determination were issued at the direct behest of the Governor of New York. See Morne Dec., Exhibit H at 2 ("Governor Kathy Hochul said . . . 'I am immediately directing the Department of Health to institute universal masking for anyone entering our schools.'"). Thus, Plaintiffs' argument that elected officials don't consider masks in schools to be important is directly

---

[11] See supra note 1.

[12] See supra note 2.

refuted. And Plaintiffs cite no case or authority for the proposition that a government interest is not important unless the government has established a state of emergency to address it.

Second, Plaintiffs argue the mandate is not actually meant to prevent the spread of COVID-19 because Defendant did not also implement a mask mandate for other areas where the virus could spread, such as private residences, churches, sporting events, and private gyms. See Pls.' Mem. at 10–11. It is true that applying a regulation inconsistently has been found to undermine a state actor's arguments that a prohibition was viewpoint neutral, City of Ladue v. Gilleo, 512 U.S. 43, 52–53 (1994) (observing that, where regulation prohibited posting signs with certain messages but not others, the city may have discriminated based on content), and found to reveal the government's actual interest is not the stated interest but is rather based on impermissible discriminatory grounds, Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 537 (1993) (finding regulation prohibiting ritual sacrifice not actually motivated by preventing cruelty to animals because "[k]illings for religious reasons are deemed unnecessary, whereas most other killings fall outside the prohibition."). However, in the context of COVID-19, a failure to include potentially harmful categories of events has been interpreted as an attempt by the state actor to tailor its regulations and impose as small a burden as possible on citizens. See, e.g., Oakes v. Collier Cty., 515 F. Supp. 3d 1202, 1215 (M.D. Fla. 2021) ("The County does not ban assemblies . . . Nor has the County restricted the size of crowds . . . Instead, Order 7 carefully limited the manner of assemblies through distancing or wearing a mask to prevent the spread of COVID-19 and protect public health. In other words, it is narrowly tailored."); Stewart, 502 F.Supp.3d at 1067 ("the [mask mandate] is narrowly tailored through its various exceptions.").

14

Here, the mandate itself indicates why certain areas were chosen for mandatory mask wearing while others were not. Notably, the mandate does not only cover schools, but also healthcare settings, adult care facilities, correctional facilities and detention centers, homeless shelters, and all public transportation. Commissioner's Determination at 2. In the Commissioner's Determination, Defendant explains why these locations were chosen for the mandate:

> Certain settings and areas (e.g., healthcare, schools, and public places located in CDC-identified areas of substantial or high community transmission) pose increased challenges and urgency for controlling the spread of this disease because of the vulnerable populations served, the disproportionate percentage of individuals (e.g., children) who are not yet eligible for the COVID-19 vaccination, and/or the substantial to high levels of community transmission.

Id. at 1. Further, it has been recognized that the school environment is particularly conducive to the spread of disease given the great length of time children spend together in close quarters. M.F. v. Cuomo, 2021 NYLJ LEXIS 862 (Sup. Ct. Nassau Cty. Aug. 26, 2021) (citing F.F. v. New York, 143 N.Y.S.3d 734 (App. Div. 3rd Dep't.)) ("Due to the nature of schools, where children spend significant periods of time in close contact with one another, viruses can quickly sweep through a classroom.").

Therefore, the mask mandate's inclusion of schools and exclusion of other situations in which children might gather is quite apparently motivated by a desire to prevent the spread of COVID in circumstances where children, and all citizens, are most vulnerable, while balancing the need to burden citizens as little as possible. This balancing does not undermine Defendant's assertion that the mask mandate is intended to prevent the spread of COVID-19.

Third, Plaintiffs argue that COVID-19 is not an important governmental interest because "Covid-19 currently does not represent an emergency or abnormal threat," and that for most

children and young adults, "Covid-19 infection poses less of a mortality risk than the seasonal

influenza." Pls.' Mem. at 11–12.

Defendant responds by arguing that new strains of the virus affect children differently

than past strains, and that, while in the past children have been less likely to contract COVID-19,

not only has their rate of infection and hospitalization increased, children now constitute a

disproportionately high number of infections compared to other groups. To support this

assertion, Defendant cites to third-party reports and studies from organizations like the CDC,

American Academy of Pediatrics, and the New York State Department of Health[13]. These

studies establish that "the Delta variant might cause more severe illness than previous variants in

unvaccinated people," see Morne Dec., Ex. M. at 1, infection rates, emergency department visits,

and hospital admissions among children have increased drastically since June 2021, see Morne

Dec., Ex. N. at 1256 & Ex. O at 1250–1251, children now constitute between 26.8% and 28.9%

of COVID-19 cases despite only making up 22.2% of the population, see Morne Dec., Ex. P at 4

& Ex. R. at 1, and overall positivity rates in the state of New York are steadily increasing, see

Morne Dec. at 14.

It is evident that COVID-19 still poses a significant threat. As stated above, COVID-19

has killed over 700,000 Americans in the 19 months that have passed since March 2020.

---

[13] Plaintiffs argue that because Defendant has produced third party reports and studies, but has
not produced an expert competent to vouch for their accuracy, the evidence is not a "legally
competent" response. See Pls.' Reply at 1. However, Plaintiffs cite no authority for this
proposition. Additionally, government actors "have a right to rely on the recommendations given
by reputable public health authorities," W.S. v. Ragsdale, No. 21-CV-01560, 2021 WL 2024687,
at *3 (N.D. Ga. May 12, 2021), and citation to evidence produced by credible experts of mask
efficacy has been held sufficient in other courts. See, e.g., Resurrection Sch. v. Hertel, 11 F.4th
437 (6th Cir. 2021) (finding citation to reports by "credible experts" constituted "more than
ample evidence that requiring masks in the school setting minimizes the spread of COVID-19.")

Whereas the seasonal flu only kills between 12,000 to 52,000 per year.[14] These 700,000 deaths occurred even with intermittent societal shutdowns, mask mandates, social distancing guidelines, and now vaccination. Defendant has provided ample evidence that COVID-19 rates are rising and still present a viable threat to society which the government has an important interest in stopping. Defendant has also shown sufficiently for the purposes of this motion that COVID-19 poses a threat to students in schools.

While it may be true that COVID-19 has not presented a significant threat of mortality to children in the past, the State has presented significant evidence that new strains of the virus affect children differently than previous strains, and that these strains are more contagious and potentially more dangerous. We are once again in an area "fraught with medical and scientific uncertainties," and the state must be granted "especially broad" latitude to act in the interests of the public health. South Bay, 140 S. Ct. at 1613–14 (2020) (C.J. Roberts, concurring) (quoting Marshall v. United States, 414 U. S. 417, 427 (1974)).

Additionally, the Plaintiffs' focus on the death rate among children does not account for other dangers, such as the potential long term health impacts on those who survive and the transmission of the virus from children to others who may not fare so well. See M.F., 2021 NYLJ LEXIS 862, at *8 ("While the reported death rate among children has fortunately been low, as illustrated above, this is just one piece of the equation, and the simple reliance on this figure does not account for other dangers, such as the health impact on children who survive the virus, and their transmission to others."). The government is charged with protecting the feeble and robust alike.

---

[14] See Disease Burden of Flu, CDC, found at cdc.gov/flu/about/burden (last viewed October 11, 2021).

Therefore, Defendant is likely to show that the state has an interest in mandating children in schools wear masks to curtail the spread of COVID-19. This comports with other courts that have recently found COVID to still be a significant threat and compelling government interest. See e.g., Zinman v. Nova Se. Univ., Inc., No. 21-CV-60723, 2021 WL 4025722, at *12 (S.D. Fla. Aug. 30, 2021) (holding Plaintiff "cannot plausibly allege" that preventing spread of COVID was not a legitimate government interest), report and recommendation adopted, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021); Denis v. Ige, No. 21-CV-11, __ F. Supp __, 2021 WL 1911884 (D. Haw. May 12, 2021) ("[T]here is no question that the State here has a compelling interest in protecting its citizens from the SARS-CoV-2 virus.") (quoting Denver Bible Church v. Azar, 494 F. Supp. 3d 816, 828 (D. Colo. 2020)); Oakes, 515 F. Supp. 3d at 1216 ("the County's interest in preventing the spread of COVID-19 and protecting individuals' health is substantial" and sufficient for intermediate scrutiny); Hopkins, 518 F. Supp. 3d at 717 ("Stemming the spread of COVID-19 is unquestionably a compelling interest.").

   b.   The Mask Mandate is Likely to be Found to be Narrowly Tailored

Under intermediate scrutiny, an incidental restriction on First Amendment rights must be narrowly tailored to advance the government's substantial interest and cannot be "greater than is essential to the furtherance of that interest." Turner I, 512 U.S. at 662. To meet this standard, "a regulation need not be the least speech-restrictive means of advancing the Government's interests. 'Rather, the requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation. . . [and] the means chosen do not burden substantially more speech than is necessary to further the government's legitimate interests.'" Id. (quoting Ward v. Rock Against Racism, 491 U.S. 781, 799 (1989)).

Plaintiffs argue that, even if preventing the spread of COVID-19 is an important government interest, the mask mandate as applied to schools does not promote that interest more effectively than no requirement because (1) children are inefficient transmitters of COVID-19, and (2) masks do not prevent the transmission of COVID-19.

i.     *Children as Inefficient Transmitters*

Plaintiffs claim that the risk of children transmitting COVID-19 to older, more vulnerable, adults "is small relative to the risk of transmission from people older than 18 to others" and "children are less efficient at spreading the virus to adults than adults are at spreading the virus to children or each other." Pls.' Mem. at 14. However, even if it is true that children spread COVID-19 to adults at a lower rate than adults spread it to each other, that does not mean that children *cannot* spread the virus to vulnerable adults or to other children who may suffer serious consequences. Further, as discussed above, the Defendant has established that the new Delta variant is more contagious and spread much more easily than past forms of the virus. Thus, so long as masks do indeed prevent COVID-19 from spreading, it is likely to be found that masking children in schools does promote the government's interest more than no regulation at all.

ii.    *Masks as an Effective Means of Stopping the Spread of COVID-19*

Plaintiffs next argue that the mask mandate does not prevent the spread of COVID-19 because masks themselves do not stop the virus from spreading. See Pls.' Mem. at 15–17.

Plaintiffs present an expert opinion from an industrial hygienist who states that "[s]urgical and cloth masks do not effectively protect individuals from exposure to very small airborne aerosols," that these masks only provide between 5% and 10% relative risk reduction,

and that when there are gaps between the mask and the face, relative risk reduction falls to 0%. See Pls.' Mem. at 16–17.

Defendant responds once again by pointing to studies and reports from organizations such as the CDC, Proceedings of the National Academy of Sciences ("PNAS"), National Academy of sciences, and the WHO. These documents include guidance from the CDC and WHO recommending the use of masks for K-12 schools and the general public, see Morne Dec. at 17, Ex. HH at 6, a study from PNAS establishing that mask-use "significantly reduces the number of [COVID-19] infections," Morne Dec., Ex. CC. at 1–2, an article published in the National Academy of Sciences observing that laws mandating mask use are "effective at increasing compliance and slowing the spread of COVID-19." Morne Dec. at 21, and a scientific brief from the CDC establishing that mask-use prevents the transmission and inhalation of droplets and aerosols containing COVID-19, id. at 20–21, Ex. KK.

Further refuting Plaintiffs' assertions that children do not transmit COVID-19 and masks do not prevent COVID-transmission are two recent studies promulgated by the CDC. These studies found, respectively, that "the odds of a school-associated COVID-19 outbreak in schools without a mask requirement were 3.5 times higher than those in schools with an early mask requirement"[15] and "[c]ounties without school mask requirements experienced larger increases in pediatric COVID-19 case rates after the start of school compared with counties that had school mask requirements."[16] At least one other court has likewise found that "just about every public

---

[15] Megan Jehn, et.al., Association Between K–12 School Mask Policies and School-Associated COVID-19 Outbreaks — Maricopa and Pima Counties, Arizona, July–August 2021, CENTERS FOR DISEASE CONTROL AND PREVENTION MORBIDITY AND MORTALITY WEEKLY REPORT, Vol. 70, September 24, 2021.

[16] Samantha E. Budzyn, et.al, Pediatric COVID-19 Cases in Counties With and Without School Mask Requirements — United States, July 1–September 4, 2021, CENTERS FOR DISEASE

health body promotes" mask wearing as an effective means to reduce COVID-19 transmission. Oakes, 515 F. Supp. 3d at 1216.

Given the many reliable sources that establish masks as an effective means to stop the spread of COVID-19, the expert testimony provided by Plaintiffs at most establishes scientific uncertainty and a debate between experts in the face of an ongoing public health crisis. The Constitution "principally entrusts the safety and the health of the people to the politically accountable officials of the States." South Bay, 140 S. Ct. at 1613, (Roberts, C. J., concurring in denial of application for injunctive relief). In such a situation, courts "must afford substantial deference to state and local authorities about how best to balance competing policy considerations during the pandemic." Roman Catholic Diocese v. Cuomo, 141 S. Ct. 63, 74 (2020) (Kavanaugh, J., concurring). State authorities must be allowed to rely on recommendations given by reputable public health authorities such as the CDC and WHO in the face of an ongoing pandemic. See W.S. v. Ragsdale, No. 21-CV-01560, 2021 WL 2024687, at *3 (N.D. Ga. May 12, 2021) ("Defendants have a right to rely on the recommendations given by reputable public health authorities, such as the Centers for Disease Control and Prevention and the Georgia Department of Public Health, when deciding how to combat COVID-19"); see also Jacobson, 197 U.S. at 35 (despite plaintiff's presentation of multiple experts opposing vaccination, finding that vaccination "finds strong support in the experience of this and other countries" and thus no court would be justified in disregarding the state action simply because "in its or their opinion that particular method was–perhaps or possibly–not the best either for children or adults").

---

CONTROL AND PREVENTION MORBIDITY AND MORTALITY WEEKLY REPORT, Vol. 70, September 24, 2021.

Additionally, the Court cannot say that it will likely be found that the mask mandate burdens "substantially more" speech than is necessary. As discussed above in section IV(B)(3)(a), the mandate, by its terms, carefully limits the circumstances where masks must be worn to those in which COVID is most likely to spread to unvaccinated individuals. See Oakes, 515 F.Supp.3d at 1216; Stewart, 502 F.Supp.3d at 1067 ("the [mask mandate] is narrowly tailored through its various exceptions.").

Thus, Plaintiffs are not likely to succeed in showing that the mask mandate does not prevent the spread of COVID-19 better than no regulation at all or that the mandate burdens substantially more speech than is necessary.

### C.  Public Interest

Even if Plaintiffs were able to establish a likelihood of prevailing on the merits, the public interests that would be harmed outweigh the alleged harm to Plaintiffs. Plaintiffs argue that the masks interfere with their ability to show and perceive facial expressions and alter the tonal qualifies of their voices. See Pls.' Mem. at 19. Allegedly, this interferes with Plaintiffs' ability to receive an education. Id. However, given the evidence presented by Defendants that COVID-19 infection rates are increasing, and masks prevent the spread of COVID-19, enjoining the mask mandate may imperil thousands of lives and cause schools to shutdown, which would in turn cause severe disruptions in Plaintiffs' learning. See Minn. Voters All. v. Walz, 492 F. Supp. 3d 822, 840 (D. Minn. 2020) (finding that "[t]he balance of harms and the public interest both weigh very heavily against enjoining enforcement of" a mask mandate because masks are "a measure that federal health officials recommend and that studies have predicted will save thousands of lives."); P.M. v. Mayfield City Sch. Dist. Bd. of Educ., 2021 WL 4148719, at *4 (N.D. Ohio Sep. 13, 2021) ("enjoining the mask mandate would pose an increased risk of quarantines, illness, and long-term learning disruptions"). While educational quality is

undoubtedly an important concern, it is clearly outweighed by the loss of great numbers of lives and the learning disruptions that could occur if the quarantine were enjoined. Thus, the public interest favors leaving the mask mandate in place.

### D.  Plaintiffs' Request for Expedited Discovery

In evaluating requests for expedited discovery, courts have applied two different approaches. The first is a four-part test derived from Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y. 1982). Under the Notaro approach, expedited discovery is justified only when all the following factors are present: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury [that] will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." Dentsply Sirona Inc. v. LIK Supply, Corp., No. 16-CV-0806, 2016 WL 3920241, at *9 (N.D.N.Y. July 15, 2016).

The second approach is a more flexible and depends upon "reasonableness and good cause." Briggs & Stratton Corp. v. Chongquing Rato Power Co., No. 13-CV-0316, 2013 WL 12134085, at *1 (N.D.N.Y. Apr. 25, 2013). This approach considers the Notaro factors but does not treat them as dispositive. See N. Atl. Operating Co. v. Evergreen Distributors, LLC, 293 F.R.D. 363, 368 (E.D.N.Y. 2013) (noting that courts have "considered similar factors when analyzing good cause, but [do] not specifically limit their inquiry to Notaro's considerations"). Additional factors a court may consider under the "reasonableness and good cause" analysis include, but are not limited to, "(1) the timing and context of the discovery requests, including whether a preliminary injunction hearing has been scheduled; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent." Briggs, 2013 WL 12134085, at *1.

In recent years, most district courts in the Second Circuit have favored the "reasonableness and good cause" approach, and some have even suggested that a strict adherence to the Notaro factors is inconsistent with FRCP 1 and 26(d). See, e.g., N. Atl. Operating Co. v. Evergreen Distributors, LLC, 293 F.R.D. 363, 368 (E.D.N.Y. 2013) (quoting Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002) for the proposition that it is "inconsistent with FRCP 1 and 26(d) that, '[t]he Notaro factors would not accommodate expedited discovery in circumstances even where such discovery would facilitate case management and expedite the case with little or no burden to the defendant simply because the plaintiff would not suffer irreparable injury.'"); Fid. Info. Servs., Inc. v. Katz, No. 09-CV-766, 2009 WL 10721269, at *6 (N.D.N.Y. Aug. 4, 2009) (Kahn, J.) ("When deciding whether to grant expedited discovery, some courts apply a four-part test that resembles the preliminary injunction standard . . . . More recently, courts have applied a more flexible standard of 'reasonableness' and 'good cause.'").

Here, the Court adopts a standard of "reasonableness and good cause." As such, while the Court has not found a likelihood of irreparable harm, this fact is not dispositive. As Defendant notes, there is no indication that responsive materials would be lost or destroyed if Plaintiff's request were denied. Pl. Memo. of Law at 22. On the other hand, Plaintiffs' request is limited in scope and not overly burdensome on Defendant. Defendant does not argue otherwise. Furthermore, the fact that Plaintiffs seek expedited discovery to assist in pursuing a preliminary injunction also weighs in Plaintiffs' favor. Weighing these factors, the Court finds that Plaintiffs' limited discovery request is reasonable.

## V.    CONCLUSION

Plaintiffs have not shown they are likely to succeed in establishing that the conduct at issue falls under the protective umbrella of the First Amendment or, even if it does, that the mask

mandate would not pass intermediate scrutiny. However, Plaintiffs will be granted expedited discovery in advance of an order to show cause hearing regarding Plaintiffs' request for preliminary injunction to be held at a later date.

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' request for a temporary restraining order is hereby **DENIED**; and it is further

**ORDERED**, that Plaintiffs' request for expedited discovery is hereby **GRANTED**, defendant shall serve the following documents and information on Plaintiffs' attorney on or before November 10, 2021:

(1) All studies, opinions, papers, data, and statistics relied upon by Defendant in his attempt to ascertain the harm and risk of COVID-19 (and all of its variants) to children under 18 years of age;

(2) All studies, opinions, papers, data, and statistics that were rejected by Defendant in his attempt to ascertain the harm and risk of COVID-19 (and all of its variants) to children under 18 years of age;

(3) All studies, opinions, papers, data, and statistics relied upon by Defendant in his attempt to ascertain that masks worn by children under 18 years of age are an effective barrier to the transmission of COVID-19 (and of all its variants) in schools and in general;

(4) All studies, opinions, papers, data, and statistics that were rejected by Defendant in his attempt to ascertain that masks worn by children under 18 years of age are an effective barrier to the transmission of COVID-19 (and of all its variants) in schools and in general;

(5) All studies, opinions, papers, data, and statistics relied upon by Defendant in his attempt to ascertain that schools are a place of significant transmission of COVID-19 (and of all its variants);

(6) All studies, opinions, papers, data, and statistics that were rejected by Defendant in his attempt to ascertain that schools are a place of significant transmission of COVID-19 (and of all its variants);

(7) All studies, opinions, papers, data, and statistics relied upon by Defendant in his attempt to ascertain that children under 18 years of age are significant or substantial transmitters of COVID-19 (and of all its variants);

(8) All studies, opinions, papers, data, and statistics that were rejected by Defendant in his attempt to ascertain that children under 18 years of age are significant or substantial transmitters of COVID-19 (and of all its variants).

(9) All studies, opinions, papers, data, and statistics that were reviewed, considered or analyzed by Defendant that in any way pertained to the efficacy or inefficacy of wearing masks in inhibiting or preventing the transmission of a virus, including, but not limited to, COVID-19.

**IT IS SO ORDERED.**

DATED:      October 13, 2021
              Albany, New York

LAWRENCE E. KAHN
United States District Judge