UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

L.T AND M.T. by their parent Jeffrey N. Thomas, JEFFREY N. THOMAS as parent of L.T and M.T.; T.L., B.L., R.L., A.L. by their parent Karen LeClair; KAREN LECLAIR as parent of T.L., B.L., R.L., A.L.; J.S. by his parent Danielle Schipano; DANIELLE SCHIPANO as parent of J.S.; B.P by his parent Andrea Penamora, ANDREA PENAMORA as parent of B.P.; E.W. by her parent Joseph Whitehead; and JOSEPH WHITEHEAD as parent of E.W.

        Plaintiffs,

vs.

HOWARD A. ZUCKER, in his official capacity and in his individual capacity,

        Defendant.

Civil Action No.:  21-cv-1034 (LEK/DJS)
**Order to Show Cause**

---

## THE AFFIRMATION OF THOMAS MARCELLE MADE IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION INCLUDING AN AFFIRMATION OF SERVICE.

**THOMAS MARCELLE,** being a duly licensed and a practicing attorney of the State of New York and of the United States District Court for the Northern District of New York, affirms under penalty of perjury as follows:

1. I am the attorney for plaintiffs in the above captioned action.

2. I am familiar with the facts that give rise to this cause of action and make this affirmation in support of plaintiffs' accompanying Order to Show Cause.

3. I incorporate, by reference, the allegations contained in the Verified Complaint as if fully set forth herein.

4. Plaintiffs make a motion for a preliminary injunction via an order to show cause.

5. Temporary relief **is** requested.

1

6. Based upon the verified Complaint and for the reasons stated in the accompanying memorandum of law, plaintiffs have suffered and will continue to suffer irreparable injury.

7. The Court is fully familiar with the facts and laws of this case.

8. However, there has been a significant change of circumstances.

9. The New York State Supreme Court has declared that Defendant acted unconstitutionally by imposing a mask mandate (10 NYCRR §§ 2.60, 2,60a), on primary and secondary students while in school.

10. The plaintiffs adopt the reasoning and position set forth in *Demetriou v Bassett,* Supreme Court, Nassau County, Rademaker, J., index No. (January 25, 2022).

11. A copy of that decision is attached hereto as exhibit A.

12. Plaintiffs ask that the Court forgo further memoranda.

13. Normally, under the Local rules, plaintiffs would have to wait more than a month to be heard before he could be heard.

14. As a practitioner in this Court for 32 years, it has been my experience that a proper motion for a preliminary injunction is heard via Local Rule 7(e) to prevent the continuation of an irreparable injury.

15. Therefore, plaintiff asks the Court to allow him to proceed under Rule 7.1(e) via an order to show cause and seek a temporary restraining order and timely preliminary injunction.

/s/ *Thomas Marcelle*
Thomas Marcelle, Esq. (Bar Roll No. 102117)
Counsel for Plaintiff
61 Devonshire Drive
Slingerlands, New York 12207
P: (518) 424-9275
Email: tjmarcelle88@gmail.com

2

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

Index No. 616124/2021

DECISION AND ORDER

------------------------------------------------------------X

MICHAEL DEMETRIOU as p/n/g of C.D. and on behalf of himself and all other persons similarly situated; ADRIANNA ALBRITTON as p/n/g/ of C.M., BRENDAN CURLEY as p/n/g/ of M.C., KAREN FERRARO as p/n/g/ of H.L., CATHERINE GRIMES as p/n/g/ of C. G., CHRISTINE BOCHAT-SMITH as p/n/g/ of G. S., CHRISTINE ENGLISH as p/n/g/ of R.E., DANIELE SHIPANO as p/n/g/ of J. S., ELIZABETH CUTLER as p/n/g/ of C.S.C., JENNIFER SAIA as p/n/g/ of V.S., KRISTEN DOUKAS as p/n/g/ of D.D., MARIA VASSEL as p/n/g/ of N.P., MYSTIE MCNEILL as p/n/g/ of A.B., KATHY TELEC as p/n/g/ of L.T., all on behalf of persons similarly situated.

Petitioners,

v.

NEW YORK STATE DEPARTMENT OF HEALTH, PUBLIC HEALTH AND HEALTH PLANNING COUNCIL, MARY T. BASSETT in her official capacity as the Commissioner of Health for the State of New York, KATHLEEN C. HOCHUL, in her official capacity as the Governor of the State of New York,

Respondents

------------------------------------------------------------X

There can be no doubt of the good intentions behind 10 NYCRR §§ 2.60; 2.60(a). To be sure, every resident of New York wants to put this pandemic behind them and wishes to participate in ending the abnormality of the last couple of years. To that end, the prior Governor of this State issued Executive Orders under the general umbrella of public health and safety.

Former Governor Cuomo executed more than several Executive Orders under the rubric of a declared state emergency, which established and then continued a myriad of policies and

- 1 -

mandates to deal with the spread of COVID-19. Among some of the requirements, mandates, and policy initiatives were procedures and rules concerning social distancing, masking, contact tracing, and vaccination.

Eventually, in March 2021, the New York State Legislature curbed former Governor Cuomo's authority as well as any future Governor, to issue Executive Orders during a state disaster emergency. See Executive Law § 29-A. Essentially, Executive Law § 29-A prevents the type of mandates and directives that former Governor Cuomo included in his various COVID-19 related Executive Orders.

The issue presented here does not include a challenge to any Executive Order issued by Governor Hochul, but rather a challenge to the enactment of a "rule" promulgated on December 10, 2021, by an administrative official of an Executive branch agency; to wit, the Commissioner of Health for the State of New York, Mary T. Bassett, M.D. The subject "rule" has been endorsed and enforced publicly by Governor Hochul. Notably, in her Executive Order of November 26, 2021, Governor Hochul declared a disaster emergency in the State of New York; however, Respondents admit in their Answer that currently there is no state disaster emergency. (See Respondents Answer Paragraph 12). Ideally, the respondents would have the declaration of November 26, 2021, alone suffice to legally support the promulgation and enactment of 10 NYCRR §§ 2.60; 2.60(a) the "mask mandate" as well as the Commissioner's determination. It does not, particularly in view of the amendment of Executive Law § 29-A by the New York State Legislature as well as the Respondent's admission.

The subject rule, 10 NYCRR §§ 2.60; 2.60(a) requires, *inter alia*, all state residents to wear a face-covering (mask) if above the age of 2 and able to medically tolerate same while in a public place and not able to maintain social distancing. This has been decided and determined by Commissioner Bassett to include in part, schools and school children.

The petitioners herein bring this action on behalf of all minor school children and persons similarly situated within the State of New York alleging, *inter alia*, that 10 NYCRR §§ 2.60; 2.60(a) is a law and not a permissibly enacted rule, null and void as a matter of law, improperly enacted, constitutionally impermissible, violative of their constitutional rights, and unenforceable. Petitioners seek a judgment declaring 10 NYCRR §§ 2.60; 2.60(a) null and void, to permanently enjoin the respondents, including the Governor and Commissioner from enforcing 10 NYCRR §§ 2.60; 2.60(a), as well as a permanent injunction preventing the respondents from re-adopting same without specific legislative authority.

To be clear, this Court does not intend this decision in any way to question or otherwise opine on the efficacy, need, or requirement of masks as a means or tool in dealing with the COVID-19 virus. This Court decides only the issues of whether the subject rule was properly enacted and if so whether same can be enforced.

For the reasons stated herein, the Court holds that 10 NYCRR §§ 2.60; 2.60(a) is a law that was promulgated and enacted unlawfully by an Executive branch state agency, and therefore void and unenforceable as a matter of law.

- 2 -

To begin, had the Governor been able to enact a "mask mandate" such as 10 NYCRR §§ 2.60; 2.60(a), then same would have been included in the Executive Order of November 26, 2021, or it could have been included in another Executive Order subsequently, for example, on December 10, 2021, the date of the Commissioner's determination. This did not occur. What did occur was that, being unable to include such a mandate in an Executive Order due to the State Legislature's proscription against such broad ranging Executive branch law making powers (Executive Law § 29-A), the Governor utilized the New York State Department of Health to issue this "emergency" "rule".

It is evident that the Legislature of the State of New York is the branch of government charged with enacting laws and the Executive branch is charged with enforcing the law. To some extent this clear division of authority and responsibility is blurred and difficult to define in many instances particularly when a state agency enacts administrative rules that relate to a law. But where the line of authority begins and ends lies at the core of our constitutionally established form of representative government. "At the heart of the present case is the question whether this broad grant of authority contravened the oft-recited principle that the legislative branch of government cannot cede its fundamental policy-making responsibility to an administrative agency. As a related matter, we must also inquire whether, assuming the propriety of the Legislature's grant of authority, the agency exceeded the permissible scope of its mandate by using it as a basis for engaging in inherently legislative activities." (Boreali v Axelrod, 71 NY2d 1, 9 [1987])

In the Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v. New York City Dept. of Health and Mental Hygiene, 23 NY3d 681 [2014], the Court of Appeals held that *Boreali* sets out four "coalescing circumstances" present in that case that convinced the Court "that the difficult-to-define line between administrative rule-making and legislative policy-making ha[d] been transgressed," and explained that "[w]hile none of these circumstances, standing alone, is sufficient to warrant the conclusion that the [Public Health Council] has usurped the Legislature's prerogative, all of these circumstances, when viewed in combination, paint a portrait of an agency that has improperly assumed for itself the open-ended discretion to choose ends" that is the "prerogative[ ] of [a] Legislature" (id., at 11, 18 [internal quotation marks and square brackets omitted]).(Matter of NY Statewide Coalition of Hispanic Chambers of Commerce v NY City Dept. of Health & Mental Hygiene, 23 NY3d 681, 696 [2014]).

In the instant matter, an important issue is whether 10 NYCRR §§ 2.60; 2.60(a) is a rule that gives more definition and guidance as it relates to a law enacted by the State Legislature or can it be considered a law enacted by an official of government other than the State Legislature. The former is permissible in many instances and well settled in New York jurisprudence. The latter is impermissible without question. Since on its face, 10 NYCRR §§ 2.60; 2.60(a) is called a rule, enacted by an Executive branch official, this Court turns to the laws upon which the legal existence of 10 NYCRR §§ 2.60; 2.60(a) relies upon and is purportedly derived from; to wit, the Public Health Law and the State Administrative Procedure Act.

The Court cannot find any law enacted by the State Legislature that specifically gives the Department of Health and its Commissioner the authority to enact a law. Further, the Court can find no law to which the respondents point that would serve as the "host law" for and from which

-3-

10 NYCRR §§ 2.60; 2.60(a) is enacted and intended to supplement (Matter of General Electric Capital Corp. v. New York State Division of Tax Appeals, 2 NY3d 249 (2004)). In fact, the only law enacted by the State Legislature regarding COVID-19 and related to the issue at bar is Title 8 of the Public Health Law which concerns contact tracing and not face coverings.

The legislative response to COVID-19 is contained in Title 8 of Article 21 of the Public Health Law. (Public Health Law §§ 2180 - 2182). This provision allows "contact tracers" and "contact tracing [entities]" to investigate, identify, and contact individuals for the purposes of containing the novel coronavirus. Title 8 limits contract tracing to efforts necessary to protect public health, and the legislature provided significant protection of personal and information privacy. (Public Health Law § 2181 [contact tracing; confidentiality]). Article 8 does not address the use of face masks to prevent COVID-19, and there are no specific statutory mandates contained in the Public Health Law to require or prescribe the use of facial coverings as a means to contain the spread of COVID-19.

In both *Boreali* and in the *Matter of New York State Coalition of Hispanic Chambers of Commerce*, the Court of Appeals considered public health initiatives which addressed second-hand cigarette smoke and the prohibition against food service establishments from selling sugary drinks in containers larger than 16 fluid ounces, respectively. Much like COVID-19, lung cancer, obesity, and diabetes present significant challenges to public health systems, and yet even in these instances, the Executive Branch was proscribed from engaging in overreach without a statutory grant of authority. Furthermore, the Legislature amended the Executive Law to limit the Governor's ability to utilize her emergency power to issue "any directive during a state disaster emergency," and added a provision to the Executive Law which allows the legislature to terminate by concurrent resolution executive orders issued [under Executive Law 29-a] at any time." (Executive Law 29-a [4])

Public Health Law §§ 201; 206; and, 225 delineate the scope of authority of the Department of Health and concomitantly, the Commissioner. Surely the Commissioner has the authority to implement and apply rules concerning public health. However, nowhere in the Public Health Law is the Commissioner bestowed with the authority to make a law. While the Commissioner may enact rules that appear to have the full force, effect, and weight of a law, those rules must be tailored, necessarily related, and attached to a law that the State Legislature has passed lest the State Legislature become completely superfluous. Suffice it to state that there are too many examples of instances to mention wherein tolerating laws cloaked as agency rules that are not related to laws passed by the State Legislature would result in the demise of that co-equal branch of government. This Court does not need to contort the bounds of reality to imagine chaos in this State wherein laws were rules made from Executive branch appointees such as the Commissioner of the Department of Motor Vehicles issuing annually new and differing speed limits or other rules of the road.

Recent times further somewhat illustrate the requirement of and adherence to the separation of powers when one looks at recent bail reform. The issue of bail reform was one of many agendas for former Governor Cuomo. The issue was resolved in the form of an overhaul of criminal statutes

by the State Legislature. Most certainly, bail reform was not done by rules enacted by the Department of Corrections and Community Supervision Commissioners.

To allow such agency law making would result in laws being changed at the whim of every new Commissioner who could then be said to be beholden to their appointor but also it would surely result in a lack of representative government wherein only a select few appointees of the Governor make the laws. This is the very antithesis of constitutionally established representative government.

The Petitioners further argue that the Commissioner passed 10 NYCRR §§ 2.60; 2.60(a) in contravention of the State Administrative Procedure Act. 10 NYCRR §§ 2.60; 2.60(a) was promulgated as an emergency "regulation" however, respondents cannot support the "emergency" classification other than to say the Commissioner chose to call it an emergency.

It is clear that 10 NYCRR §§ 2.60; 2.60(a) was promulgated without any substantive justification for the emergency adoption as required by State Administrative Procedure Act §§ 202.6(d); 202.6(e) as the only justification the respondents offered for emergency adoption was entirely conclusory and in their answer to the instant matter the Respondents simply cite to the Commissioner's determination of December 10, 2021, alleging same was merely a re-adoption of a prior determination of August 27, 2021, except that the new rule included "peer reviewed research." As research is continuing daily, it is difficult to comprehend how the mere inclusion of "peer reviewed research" could not be used as a launching pad to continuously adopt the same rule every time the current rule expires *ad infinitum*. One could argue that the COVID-19 pandemic had been ongoing and therefore the need to explain the entire justification or rationale for emergency adoption of a rule was unnecessary. Perhaps a reasonable argument; however, it is one that is legally insufficient in this instance as it ignores the requirements and maybe more importantly, the purpose and spirit of the State Administrative Procedure Act which at its very core ensures against administrative law making. In this regard, the argument that the Commissioner's determination of December 10, 2021, complied with the minimum requirements contained in the State Administrative Procedure Act §§ 202.6(d); 202.6(e) is unsupported. As a result, the "emergency" "rule" that was declared by the Commissioner on December 10, 2021, as well as 10 NYCRR §§ 2.60; 2.60(a) must fail as violative of the State Administrative Procedure Act.

Lastly, inasmuch as petitioners have been and continue to be subject to an improperly enacted law that is void *ab initio*, as well as there being a violation of New York State constitutional principles, the irreparable harm suffered is patent and therefore, an injuction is warranted. See Buffalo v. Mangan, 49 AD2d 697 (4th Dept 1975); Tucker v. Toia, 54 AD2d 322 4th Dept 1976).

As stated previously, there can be no doubt that every person in this State wishes, wants, and prays that this era of COVID ends soon and they will surely do their part to see that is accomplished. However, enacting any laws to this end is entrusted solely to the State Legislature. While the intentions of Commissioner Bassett and Governor Hochul appear to be well aimed squarely at doing what they believe is right to protect the citizens of New York State, they must

take their case to the State Legislature. Should the State Legislature, representative of and voted into office by the citizens of New York, after publicly informed debate, decide to enact laws requiring face coverings in schools and other public places then the Commissioner would likely be well grounded in properly promulgated and enacted rules to supplement such laws.

Until the New York State Legislature acts; based upon the arguments of counsel, a careful review of the moving papers and opposition thereto, and considering the equities, it is

ORDERED and ADJUDGED that 10 NYCRR §§2.60; 2.60(a) are violative of the New York State Constitution as promulgated and enacted and therefore null, void and unenforceable as a matter of law; and it is further,

ORDERED and ADJUDGED that 10 NYCRR §§2.60; 2.60(a) are violative of the State Administrative Procedure Act as promulgated and enacted and therefore null, void, and unenforceable as a matter of law; and it is further,

ORDERED and ADJUDGED that 10 NYCRR §§2.60, 2.60(a) are violative of the Public Health Law as promulgated and enacted and therefore null, void, and unenforceable as a matter of law; and it is further,

ORDERED and ADJUDGED that the directive of the Respondent, Commissioner Mary T. Bassets M.D., dated December 10, 2021, is null, void, and unenforceable as a matter of law, and it is further,

ORDERED and ADJUDGED that the Respondents are hereby permanently enjoined from enforcing 10 NYCRR §§2.60; 2.60(a), and it is further

ORDERED and ADJUDGED that the Respondents are hereby permanently enjoined from enforcing the directive of the Respondent, Commissioner Mary T. Bassets M.D., dated December 10, 2021, and it is further,

ORDERED and ADJUDGED that the Respondents are hereby permanently enjoined from re-adopting 10 NYCRR §§2.60, 2.60(a), and it is further,

ORDERED that all other relief requested herein is DENIED.

This constitutes the Decision, Order, and Judgment of the Court.

Dated: Mineola, New York
January 24, 2022

HON. THOMAS RADEMAKER, J.S.C

**ENTERED**
Jan 25 2022
NASSAU COUNTY
COUNTY CLERK'S OFFICE